LAND, J.
The state tax collector ruled the defendant firm to show cause why it should not pay a license tax of $660, with interest and costs, for the privilege of conducting during the yeár 1907 the business known as brokerage in cotton. The mover alleged that said firm during the year 1906 had made 6,660 contracts of 100 bales each, and on this basis owed the sum of $660 as a license tax for the year 1907.
The defendant firm answered, pleading the general issue, but admitting that during the year 1906 it had made 2,960 contracts each for 100 bales of Cotton. Further answering, the defendant pleaded that Act No. 214, p. 371, of 1906, levying a license tax on the business of brokerage in cotton, was unconstitutional, because the amount of said tax was not graduated, as required by article 229 of the Constitution of 1898. This defense *229 was sustained in the district court, and the plaintiff has appealed.
Section 2 of Act No. 214, p. 384, of 1906, as far as applicable to this case, reads as follows:
“That for carrying on the business pursuits known as brokerage in stocks or cotton, when the purchases or sales are made for the future delivery of cotton purchased or sold and where the purchase, sale or transfer of stocks are made for either present or future delivery, the license shall be based on the number of contracts made or entered into by or through the agency of such broker. A contract for the purchase or sale, for the purpose of this section, is hereby defined as being the agreement, contract or other evidence of sale or purchase of every one. hundred bales of cotton or fraction thereof either purchased or sold through the agency of such broker; a contract for the purchase, sale or transfer of stocks, for the purpose of this section, is defined as being the agreement, contract or other evidence of purchase, sale or transfer of every share of stock of a hundred dollars face value or fraction thereof of any domestic or foreign corporation purchased, sold or transferred through the agency of such broker.
“First Class. Where the number of contracts entered into shall be less than two hundred thousand, the license tax shall be twenty cents on each and every contract.
“Second Class. Where the number of contracts entered into shall be over two hundred thousand and less than five hundred thousand, the license tax shall be twenty cents on each and every contract.
“Third Class. Where the number of contracts shall be over five hundred thousand, the license tax shall be ten cents for each contract.”
It is patent that there is no graduation whatever between the first and second classes, and that there is a discrimination of 100 per cent, in favor of the third class doing the most business and presumed to be better able to contribute to the public fisc. In this graduation, so-called, the uniform practice of basing the amount of the license tax on the amount of the business transacted has been reversed.
In the same section we find that the license tax on all other brokerage business is graduated on the basis of gross annual commissions, and ranges from $25 to $1,750, according to the amount of business transacted. This has been the uniform rule as to all business pursuits ever since the adoption of the Constitution of 1898. There is no essential difference between the license tax in question and a direct tax of 20 cents on every sale or purchase made by the broker. There is no graduation whatever between 'the first and second classes. There is no graduation between the second and third classes, because the basis is not the same, and the amount of the tax is diminished, instead of being increased, as required by the rule of orderly progression. The case may be illustrated by the supposition of a tax of 10 mills on estates valued at less than $100, while a tax of only 5 mills is levied on estates exceeding $100 in value. The entire want of graduation of the license tax in question is shown by the consideration that brokers in the lower grades are required to pay in proportion double the amount exacted of brokers in the highest grade. The anomaly would not be greater if a license tax of $10 was levied on the owner of one billiard table, while a similar.tax of $5 was levied on the owner of two or more tables. In the case at bar, the absence of any reasonable graduation is so glaring that the tax collector has ignored the provisions of the statute by demanding a license tax based on 10 cents per contract. A judgment in his favor would be tantamount to holding that the license tax in question has not been graduated as required by the Constitution.
We are of opinion that the license tax in question is contrary to both the letter and the spirit of the Constitution, which even in license taxation requires some degree of equality and uniformity in the basis of assessment.
Judgment affirmed.